**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| AQUANETTA DYSON,<br><br>    Plaintiff,<br><br>    v.<br><br>EQUIFAX, INC.,<br><br>    Defendant. | Case No. 16-cv-03327-BLF<br><br>**ORDER GRANTING DEFENDANT EQUIFAX'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND**<br><br>[RE: ECF 26] |

Plaintiff Aquanetta Dyson sues Equifax, Inc. ("Equifax") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., and the California Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code § 1785.25(a). Equifax moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For reasons discussed below, the motion is GRANTED WITH LEAVE TO AMEND.

**I.   BACKGROUND[1]**

Plaintiff filed for Chapter 13 bankruptcy protection on October 30, 2014, and her plan was confirmed on February 23, 2015. Compl. ¶ 5, ECF 1. On February 21, 2016, Plaintiff "ordered a three bureau report from Experian Information Solutions, Inc. to ensure proper reporting by Plaintiff's creditors." *Id.* ¶ 6. She alleges that this report ("February 2016 Credit Report") included "several tradelines all reporting misleading and inaccurate account information". *Id.* ¶ 7. Plaintiff provides specifics as to only one account, alleging that Nationstar Mortgage, LLC ("Nationstar") reported her account as "charged off, in collection, with a balance in the amount of

---

[1] In reviewing a Rule 12(c) motion, the Court accepts all factual allegations as true and construes them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

1   $45,608.00, and a past due balance in the amount of $45,608.00." *Id.* ¶ 8. Plaintiff does not allege

2   how Nationstar's reporting was inaccurate. *See id.*

3       Plaintiff disputed the inaccurate tradelines via certified mail sent to three different credit

4   reporting agencies ("CRAs"), Equifax[2], Experian Information Solutions, Inc., and TransUnion,

5   LLC. *Id.* ¶ 9. Each CRA received Plaintiff's dispute letter and in turn notified the entities that had

6   furnished the disputed information ("furnishers"). *Id.* ¶ 10.

7       Plaintiff ordered a second three bureau report from Experian Information Solutions, Inc. on

8   May 14, 2016 ("May 2016 Credit Report"). *Id.* ¶ 13. Plaintiff alleges that Equifax "failed to

9   perform its own reasonable investigation and failed to correct the inaccuracies and failed to note

10  that Plaintiff disputed the information." *Id.* ¶ 12.

11      Plaintiff filed this action on June 15, 2016, asserting violations of the FCRA and CCRAA

12  against Equifax and Nationstar. *See* Compl., ECF 1. Nationstar was dismissed on August 11,

13  2016. Equifax now moves for judgement on the pleadings.

14  **II.    LEGAL STANDARD**

15      **A.    Rule 12(c)**

16      Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but

17  early enough not to delay trial – a party may move for judgment on the pleadings." "Rule 12(c) is

18  functionally identical to Rule 12(b)(6)," and the same legal standard applies to determine whether

19  a claim has been stated under either motion. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d

20  1047, 1055 (9th Cir. 2011) (internal quotation marks and citation omitted). When determining

21  whether a claim has been stated, the Court accepts as true all well-pled factual allegations and

22  construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*,

23  643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that

24  contradict matters properly subject to judicial notice" or "allegations that are merely conclusory,

---

[2] Equifax asserts in a footnote of its motion brief that it is not a CRA as defined by the FCRA, and therefore that it is not a proper party to this action. Def.'s Mot. at 7. n. 1, ECF 33. Equifax nonetheless has chosen to "address the merits of Plaintiff's Complaint as pleaded" in its motion for judgment on the pleadings. *Id.* The Court therefore follows suit and treats Equifax as a CRA for purposes of evaluating its motion.

unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. DISCUSSION

The Complaint contains two claims, one for violation of the FCRA (Claim 1) and the other for violation of the CCRAA (Claim 2). Although the label of the CCRAA claim indicates that it is asserted against "Defendants," it is clear from the body of the Complaint that the CCRAA claim is not asserted against Equifax. Compl. ¶¶ 24-32. Accordingly, this order addresses only the FCRA claim.

Plaintiff's FCRA claim against Equifax is subheaded "Failure to Reinvestigate Disputed Information." *Id*. ¶¶ 17-18. Plaintiff alleges that after she "disputed the accounts mentioned above" – which the Court takes to mean the "several tradelines all reporting misleading and inaccurate account information" referenced earlier in the Complaint – Equifax was required to conduct a reasonable investigation and to delete any information that was not accurate. *Id*. ¶¶ 7, 19. Plaintiff claims that "Defendants were required to send all relevant information to the furnishers which they did not do." *Id.* ¶ 19. Plaintiff alleges generally that Equifax "failed to correct the misleading and or inaccurate statements." *Id.*

Equifax moves for judgment on the pleadings on three grounds. First, Equifax points out that Plaintiff's FCRA claim against it is asserted under 15 U.S.C. § 1681s-2(b), which is applicable to furnishers, and not under 15 U.S.C. § 1681i, which is applicable to CRAs. Second, Equifax asserts that Plaintiff has not alleged facts showing that Equifax's credit reporting was inaccurate. And third, Equifax argues that it is not required to determine the legal status of Plaintiff's debts.

### A.     Code Sections Applicable to CRAs

Equifax first argues that Plaintiff has sued it under the wrong provision of the FCRA. "Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). To that end, the FCRA imposes specific obligations on CRAs, furnishers, and other categories of persons not at issue here. *See generally* 15 U.S.C. § 1681 *et seq.* Many of the obligations of CRAs are described in 15 U.S.C. § 1681i. That section provides that if a consumer disputes "the completeness or accuracy of any item of information," the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item." 15 U.S.C. § 1681i(a)(1). In addition, the CRA must provide notification of the dispute to the furnisher of the information. 15 U.S.C. § 1681i(a)(2). Such notification by the CRA triggers the furnisher's obligation to conduct its own investigation. 15 U.S.C. § 1681s-2(b). The FCRA expressly creates a private right of action for willful or negligent noncompliance with these requirements. 15 U.S.C. § 1681n & o.

Equifax correctly points out that Plaintiff's FCRA claim is asserted only under § 1681s-2(b), applicable to furnishers, and not under § 1681i, applicable to CRAs. Plaintiff acknowledges in her opposition that the Complaint does not reference § 1681i. Pl.'s Opp. at 4, ECF 34. Plaintiff therefore has failed to allege a viable claim against Equifax under the FCRA.

### B.     Inaccuracy

Equifax argues that even if Plaintiff had alleged her FCRA claim under § 1681i, the claim would fail because Plaintiff has not alleged facts showing that Equifax's credit reporting was inaccurate. The Ninth Circuit has observed that "[a]lthough the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts, including our own, have imposed such a requirement." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010).[3] "Thus, even if a . . . CRA fails to conduct a

---

[3] *Carvalho* involved claims asserted under the CCRAA, not the FCRA. *See Carvalho*, 629 F.3d at 881. However, in discussing the scope of the CCRAA, the Ninth Circuit drew heavily on cases

4

1  reasonable investigation or otherwise fails to fulfill its obligations under the FCRA, if a plaintiff
2  cannot establish that a credit report contained an actual inaccuracy, then the plaintiff's claims fail
3  as a matter of law." *Doster v. Experian Info. Sols., Inc.*, No. 16-CV-04629-LHK, 2017 WL
4  264401, at *3 (N.D. Cal. Jan. 20, 2017) (internal quotation marks and citation omitted).

5        In *Carvalho*, the Ninth Circuit noted that it previously had "explained that an item on a
6  credit report can be 'incomplete or inaccurate' within the meaning of the FCRA's furnisher
7  investigation provision, 15 U.S.C. § 1681s-2(b)(1)(D), 'because it is patently incorrect, or because
8  it is misleading in such a way and to such an extent that it can be expected to adversely affect
9  credit decisions.'" *Carvalho*, 629 F.3d at 890 (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584
10 F.3d 1147, 1163 (2009)). The Ninth Circuit went on to affirm "'the maxim of statutory
11 construction that similar terms appearing in different sections of a statute should receive the same
12 interpretation,'" *id*. (quoting *United States v. Nordbrock*, 38 F.3d 440, 444 (9th Cir. 1994)), and to
13 cite with approval a First Circuit case, *Chiang*, which the Ninth Circuit summarized as "deeming
14 the term 'inaccurate' in section 1681i(a) to be 'essentially the same' as the term 'incomplete or
15 inaccurate' in section 1681s-2(b)," *id.* (citing *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 37
16 (1st Cir. 2010)). Relying on *Carvalho*, district courts have "applied this 'patently incorrect or
17 materially misleading' standard to claims arising under various provisions of the FCRA that
18 involve the accuracy of information." *Prianto v. Experian Info. Sols., Inc.*, No. 13-CV-03461-
19 TEH, 2014 WL 3381578, at *3 (N.D. Cal. July 10, 2014). In particular, courts in this district have
20 applied the "patently incorrect or materially misleading" standard to the inaccuracy requirement
21 under § 1681i. *See, e.g., Banneck v. HSBC Bank USA, N.A.*, No. 15-cv-02250-HSG, 2016 WL
22 3383960, at *6 (N.D. Cal. June 20, 2016); *Prianto*, 2014 WL 3381578, at *3.

23       Here, perhaps the most obvious deficiency in Plaintiff's allegations against Equifax is her
24 failure to allege that the claimed inaccuracies in two different "three bureau report[s]" were

---

construing the FCRA, *see id.* at 889-91, and numerous courts have relied on *Carvalho*'s explication of FCRA requirements when addressing FCRA claims, *see, e.g., Artus v. Experian Info. Sols., Inc.*, No. 5:16-CV-03322-EJD, 2017 WL 346022, at *3 (N.D. Cal. Jan. 24, 2017); *Jaras v. Experian Info. Sols., Inc.*, No. 16-CV-03336-LHK, 2016 WL 7337540, at *4 (N.D. Cal. Dec. 19, 2016).

reported by *Equifax* rather than one of the other CRAs. Compl. ¶¶ 6, 13. In order to make out an FCRA claim against Equifax, Plaintiff must allege with specificity that Equifax reported information that was patently incorrect or materially misleading. Other courts in this district have dismissed FCRA claims based upon alleged inaccuracies in three bureau reports where no specificity is provided as to which CRA reported the inaccuracies in question. *See, e.g., Doster*, 2017 WL 264401, at *6 ("Plaintiff's FAC makes only general and unspecified allegations that her credit report, which was a three-bureau credit report, contained inaccuracies and that the CRAs reported misleading and inaccurate information, but the FAC does not allege any conduct that is specific to Experian.").

Plaintiff's allegations are deficient in other respects as well. She alleges that after her Chapter 13 plan was confirmed, she ordered the February 2016 Credit Report and discovered "several tradelines all reporting misleading and inaccurate account information." *Id*. ¶ 7. Plaintiff also alleges that "Defendant Nationstar Mortgage, LLC was reporting Plaintiff's account, beginning in 6130xxxx, as charged off, in collection, with a balance in the amount of $45,608, and a past due balance in the amount of $45,608.00." *Id*. ¶ 8. However, those allegations neither identify Equifax as the reporting entity nor identify what was inaccurate about the reporting of the Nationstar account. *See id.* Much later in the Complaint, in the paragraphs setting forth her FCRA claim against Nationstar, Plaintiff alleges that Nationstar's reporting was inaccurate and misleading because it was done "despite the Court Ordered treatment of its claim under the terms of Plaintiff's Chapter 13 plan of reorganization." *Id*. ¶ 23. That allegation appears *after* Plaintiff's FCRA claim against Equifax, is not incorporated into Plaintiff's claim against Equifax, and thus may not be considered with respect to Equifax.

**C.     Equifax is Not Required to Determine the Legal Status of Plaintiff's Debts**

Even if the Court were to consider Plaintiff's allegations regarding her Chapter 13 plan in evaluating her FCRA claim against Equifax, those allegations are insufficient to state a viable claim. To the extent Plaintiff asserts that the legal status of her debt to Nationstar changed upon plan confirmation, and therefore that it was inaccurate for Equifax to report past due balances after plan confirmation, that theory of liability has been rejected by courts in this district and other

6

districts within the Ninth Circuit. *See, e.g., Artus v. Experian Info. Sols., Inc.*, No. 5:16-CV-03322-EJD, 2017 WL 346022, at *5 (N.D. Cal. Jan. 24, 2017) (collecting cases); *Doster*, 2017 WL 264401, at *6 ("[A]s a matter of law it is not misleading or inaccurate to report a delinquent debt during the pendency of a bankruptcy."); *Polvorosa v. Allied Collection Serv., Inc.*, No. Case No. 2:16–CV–1508 JCM (CWH), 2017 WL 29331, at *3 (D. Nev. Jan. 3, 2017) ("[R]eporting delinquencies during the pendency of a bankruptcy or during a bankruptcy's automatic stay is not itself a violation of the FCRA.").

Plaintiff argues that those decisions are based upon a misunderstanding of bankruptcy law, as they fail to recognize that a bankruptcy court's order confirming a Chapter 13 plan constitutes a binding final judgment regarding the rights and obligations of the debtor and his or her creditors. According to Plaintiff, because a confirmed plan modifies the original debts, any post-confirmation reporting of pre-confirmation delinquencies or balances is inaccurate. Plaintiff appears to be arguing that CRAs cannot report information provided to them by furnishers without first independently evaluating the legal effect of a confirmed Chapter 13 plan on such information. Equifax argues that a CRA is neither capable of determining, nor required by law to determine, the legal effect of a Chapter 13 confirmation order on a debt reported by a furnisher.

The relevant case law supports Equifax's position on this point. In *Carvalho*, the Ninth Circuit noted that "reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts." *Carvalho*, 629 F.3d at 892. In that case, the allegedly inaccurate reporting involved a charge for medical services that the plaintiff, Carvalho, claimed should have been paid by her insurance company. *Id.* at 882. After Carvalho disputed the charge, several CRAs requested and received verification of the debt from the furnisher. *Id.* The CRAs thereafter continued reporting the debt, but they added Carvalho's statement of dispute to her credit reports. *Id.* at 882-83. In rejecting Carvalho's argument that the CRAs were obligated to do more, the Ninth Circuit found that "[t]he fundamental flaw in Carvalho's conception of the reinvestigation duty is that credit reporting agencies are not tribunals." *Id.* at 891. The Ninth Circuit reasoned that CRAs "simply collect and report information furnished by others" and thus are "ill equipped to adjudicate contract disputes." *Id.* For that reason, "courts have been loath to

7

allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Id.*

Plaintiff argues that *Carvalho* is distinguishable from the present case, because in *Carvalho* there had been no adjudication of the rights and obligations of the debtor and the creditor, whereas in the present case there has been such an adjudication in the form of an order confirming Plaintiff's Chapter 13 plan. Plaintiff's argument is unpersuasive. *Carvalho* did not turn on the lack of finality of the debt at issue, but rather on the Ninth Circuit's conclusion that CRAs are neither equipped nor obligated to determine the legal status of debts that have been reported and verified by furnishers.

Plaintiff's assertion of the legal effect of a Chapter 13 confirmation plan is unavailing for other reasons as well. It is true that "[t]he provisions of a confirmed plan bind the debtor and each creditor." 11 U.S.C. § 1327(a). Thus a creditor seeking payment on a debt is entitled only to those payments provided for under the plan, and "any issue decided under a plan is entitled to *res judicata* effect." *In re Blendheim*, 803 F.3d 477, 486 (9th Cir. 2015). However, the Court declines to make the logical leap urged by Plaintiff that these authorities, governing the relationships between parties to a bankruptcy action, make it a violation of the FCRA for a CRA to report a historically accurate pre-confirmation debt or delinquency. Regardless of how the rights and obligations of the parties to a bankruptcy are modified by a Chapter 13 plan, the original debt did exist prior to confirmation and Plaintiff has cited no authority suggesting that bankruptcy proceedings "erase" that historical fact for purposes of the FCRA.

Plaintiff's reliance on *In re Luedtke*, No. 02-35082-svk, 2008 WL 2952530 (Bankr. E.D. Wis. July 31, 2008), is misplaced. In *Luedtke*, the bankruptcy court concluded that a creditor whose claim was modified by a Chapter 13 confirmation order had violated that order by continuing to report the original debt to CRAs. *Id.* at *6. The court suggested that in addition to seeking sanctions for violation of the confirmed plan, the debtor also could have sought relief under the FCRA. *Id.* In making that suggestion, the bankruptcy court appeared to assume that the creditor's reporting of the original debt would have constituted an inaccuracy under the FCRA. *Id.* at *5. That view, expressed in *dicta* by a bankruptcy court outside the Ninth Circuit almost a

8

decade ago, has not been adopted by the courts in this district. In fact, it appears that *Luedtke* has been cited by only one other court, which found the decision to be irrelevant to its determination whether the plaintiff had pleaded a viable FCRA claim. *See Wylie v. TransUnion, LLC*, No. 3:16-CV-102, 2017 WL 835205, at *5 n.6 (W.D. Pa. Mar. 2, 2017) ("[T]he question before the Court is whether Defendants reported accurate information, not whether Defendant violated the bankruptcy code.") (internal quotation marks and citation omitted).

Moreover, with respect to the many debtors who fail to make all required plan payments, the original debt terms ultimately are reinstated. *See Blendheim*, 803 F.3d at 487. Indeed, historically accurate debts may be reported even after discharge, so long as the credit report indicates that the debts were discharged in bankruptcy. *See Mortimer v. Bank of Am., N.A.*, No. C-12-01959 JCS, 2013 WL 1501452, *9-11 (N.D. Cal. Apr. 10, 2013) (furnisher's reporting that the debt had been delinquent during the pendency of the bankruptcy was historically accurate and thus not actionable under the FCRA where report also indicated that the debt had been discharged in bankruptcy).

Plaintiff's counsel argued at the hearing that allowing reporting of pre-confirmation delinquencies or balances after a Chapter 13 plan has been confirmed will deprive debtors of significant benefits that they expect to obtain through Chapter 13 bankruptcy. That issue is one for Congress to resolve, not this Court. The Court's task in evaluating Plaintiff's Complaint is to determine whether the facts alleged therein make out a plausible claim that Equifax's credit reporting was inaccurate. The Court simply is not persuaded that the reporting of a delinquency or past due balance after plan confirmation is per se inaccurate under the FCRA.

However, there appears to be an open question whether such reporting could satisfy the inaccuracy requirement if unaccompanied by any indication that the consumer is in bankruptcy. *See Devincenzi v. Experian Info. Sols., Inc.*, No. 16-CV-04628-LHK, 2017 WL 86131, at *7 (N.D. Cal. Jan. 10, 2017) (declining to decide whether allegations that the "credit report contained no indication at all that the debts were the subject of a pending bankruptcy . . . would be sufficient to state a claim" but granting plaintiff leave to attempt to assert FCRA claim based on that theory). It is this Court's view that it may well be possible for a plaintiff to allege facts showing that the

reporting of a pre-confirmation delinquency is materially misleading absent any reference to a pending Chapter 13 bankruptcy, at least where a confirmed plan governs the timing and amounts of post-confirmation payments on the debt. Plaintiff, however, has not alleged whether or not the reports in question contained information regarding her bankruptcy.

### C. Leave to Amend

In deciding whether to grant Plaintiff leave to amend her pleading, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

The first factor (undue delay), second factor (bad faith), and fourth factor (undue prejudice) do not weigh against granting leave to amend at this time, although the Court may well have a different view in the event that Plaintiff's counsel fails to address the deficiencies addressed herein and persists in submitting pleadings consisting primarily of copy-and-paste boilerplate allegations. The third factor (failure to cure deficiencies) also does not weigh against granting leave to amend, as Plaintiff has not previously amended her pleading. Finally, with respect to the fifth factor (futility of amendment), the Court has grave reservations whether Plaintiff will be able to state a viable FCRA claim against Equifax. However, because it is not clear that Plaintiff cannot do so, the Court will grant her leave to amend.

If Plaintiff chooses to amend her FCRA claim against Equifax, she shall allege with specificity what reporting is attributable to Equifax and shall either attach a copy of each report or allege the offending tradelines verbatim. Failure to do so will be deemed an admission that Plaintiff is incapable of pleading specific facts giving rise to liability under the FCRA.

**IV.  ORDER**

    (1)    Equifax's motion for judgment on the pleadings is GRANTED WITH LEAVE TO AMEND;

    (2)    Any amended pleading shall be filed on or before April 17, 2017; and

    (3)    Leave to amend is limited to the FCRA claim discussed in this order; Plaintiff may not add new claims or parties without express leave of the Court.

Dated:  March 27, 2017

/s/ Beth Labson Freeman
BETH LABSON FREEMAN
United States District Judge